UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DR. KERI TURNER                                   CIVIL DOCKET

VERSUS                                            NO. 21-664

BOARD OF SUPERVISORS OF THE                       SECTION: "J"(3)
UNIVERSITY OF LOUISIANA
SYSTEM, ET AL.

## ORDER & REASONS

Before the Court are two *Motions for Summary Judgment* **(Rec. Docs. 47,**

**48)** The first **(Rec. Doc. 47)** was filed by Defendants, Board of Supervisors of the

University of Louisiana System ("Board of Supervisors") and Steven H. Kenney, Jr.

("Kenney"). Plaintiff, Dr. Keri Turner ("Dr. Turner") opposed the motion (Rec. Doc.

52), and Defendants replied to Plaintiff's opposition. (Rec. Doc. 57). The second

*Partial Motion for Summary Judgment* **(Rec. Doc. 48)** was filed by Plaintiff and

was opposed by the Defendant (Rec. Doc. 51). Plaintiff also filed a reply to

Defendant's opposition. (Rec. Doc. 63). Having considered the motions and legal

memoranda, the record, and the applicable law the Court finds that Plaintiff's

*Partial Motion for Summary Judgment* **(Rec. Doc. 48)** is **DENIED**, and

Defendants' *Motion for Summary Judgment* **(Rec. Doc. 47)** is **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This case involves claims under both the Family and Medical Leave Act

("FMLA"), 29 U.S.C. 2601, et. seq. and the Louisiana Employment Discrimination

Law ("LEDL"), La. R.S. 23:301, et. seq. Plaintiff, Dr. Keri Turner was employed by

Nicholls State University in Thibodeaux, Louisiana as a tenured Associate Professor of English Languages and Literature and a grant writer. Dr. Turner was diagnosed with irritable bowel syndrome ("IBS"), and in 2017, her symptoms began to worsen. (Rec. Doc. 22, at 3). By the spring of 2018, Dr. Turner's condition had progressed to the point that she began to have difficulty appearing for her in-person classes and office hours. (Rec. Doc. 47-1, at 1). Because of her illness, she applied for and was granted intermittent FMLA leave on March 28, 2018. *Id.* Dr. Turner claims that during this period of intermittent FMLA leave she continued to be paid without interruption and without having to submit additional medical evidence for her absences in order to qualify for sick leave. (Rec. Doc. 48-2, at 3). Dr. Turner also claims that she requested permission to teach remotely during this time but was denied. *Id.* at 4.

By the fall of 2018, Dr. Turner's department chair Dr. Ellen Barker recommended that her tenure be revoked because of her inability to teach in-person classes. *Id.* Dr. Turner appealed this recommendation to the University Tenure Revocation Committee. After a hearing in the spring of 2019, the committee voted against dismissal. *Id.* Dr. Turner further alleges that the committee recommended that she be allowed to teach online. *Id.*

In March of 2019, Dr. Turner requested an ADA accommodation from Defendant Steven Kenney, Vice President and Director of Human Resources and Nicholls State ("Kenney"). *Id.* She requested that she be permitted to teach classes exclusively online because of her need to have constant access to a restroom due to

her IBS symptoms which was supported by a note from her treating physician. *Id.* at 5. Nicholls State denied her request and instead offered to move all of her classes next door to a restroom. (Rec. Doc. 47-1, at 2). The University alleges that allowing Dr. Turner to teach exclusively online would have required the firing of four adjuncts as well as reassigning a professor to cover her in-person classes. *Id.* Dr. Barker also testified at her deposition that Dr. Turner was no longer permitted to teach online prior to her making any FMLA or ADA requests. (Rec. Doc. 57, at 2.) Dr. Turner avers that her reassignment would not have cost the University any money and that it was typical for last minute changes to the teaching schedule to occur in the English Department. (Rec. Doc. 52, at 6, 7). Further, Dr. Turner points to the fact that Dr. Barker also testified that she was never informed of the faculty committee's recommendation to allow Dr. Turner to teach exclusively online and that "if they had asked me to accommodate her and to give her all online classes, I would have done that." *Id.* at 8. Dr. Turner also filed EEOC charges on June 21, 2019 arising out of the same set of circumstances. (Rec. Doc. 47-1, at 2).

During the fall semester of 2019, Defendants allege Dr. Turner accumulated 40 absences in the course of two and a half to three months. *Id.* at 6. During this time Dr. Turner was not covered by the FMLA. *Id.* At some point during the fall of 2019, Dr. Turner met with University President Jay Clune. Plaintiff's filings provide inconsistent dates as to when this meeting occurred, but she states it was either on September 30th, 2019 or on October 31, 2019.[1] At this meeting, Plaintiff

---

[1] Plaintiff states in her *Complaint* that this meeting took place on September 30th, 2019. (Rec. Doc. 22, at 5). However, Plaintiff's *Sworn Declaration* provides that this meeting took place on October 31,

states that she was removed from her teaching position and reassigned to the writing lab, a position she alleges is normally reserved for undergraduate workers. (Rec. Doc. 52, at 14, 15). At this same meeting Dr. Turner alleges that University President Jay Clune demanded that she either resign immediately, go through the Tenure Revocation Committee again and face termination, or accept reassignment to the writing lab and retire in May of 2020. (Rec. Doc. 52-9, at 4). Dr. Turner stated that she complied with President Clune's request at that time and wrote a letter of resignation stating she intended to retire at the end of the 2019-2020 academic year. *Id.* Dr. Clune testified that Dr. Turner would have been allowed to resume teaching had she continued in the writing lab and "felt able to show up for classes regularly again." (Rec. Doc. 47-1, at 10). However, this fact stands in contrast to the fact that Dr. Turner alleges she had already submitted her resignation and would be leaving at the end of the 2020 Spring Semester regardless of her health status. (Rec. Doc. 22, at 5).

Dr. Turner also alleges that on October 17, 2019 she attended a meeting in Kenney's office in which she was informed that she would be required to produce doctor's notes for each time she took medical leave, although she maintains she had never abused the University sick leave policy. (Rec. Doc. 48-2, at 5). At this time, she was not covered by the FMLA. (Rec. Doc. 51, at 4). University policy allows that in the event of excessive absenteeism, supervisors may choose to require medical documentation for each absence to grant paid sick leave. (Rec. Doc. 48-11, at 14).

---

2019. (Rec. Doc. 52-9, at 4.) Defendant's *Statement of Undisputed Facts* also states that this meeting took place on September 30th, 2019. (Rec. Doc. 47-3, at 2).

Defendant Kenney maintains that he was not the one who asked for the doctor's notes, but that the doctor's notes were used to evaluate paid sick leave rather than intermittent FMLA leave. (Rec. Doc. 51, at 2).

However, Dr. Turner was once again granted intermittent FMLA leave on November 7th, 2019.[2] (Rec. Doc. 47-2, at 107). She claims that even though she was once again covered by the FMLA, she was still required to submit a medical excuse each time she took leave. (Rec. Doc. 48-12, at 3). The University maintains that these doctor's notes were unconnected to Dr. Turner's FMLA leave but were instead required justification for paid sick leave. (Rec. Doc. 51, at 2). Dr. Turner also states that she questioned the requirement of medical excuses while under FMLA leave in a series of emails with HR, but she was unsuccessful in challenging the requirement. *Id.* Dr. Turner alleges that she attempted to appeal to the University Board of Supervisors throughout the remainder of the school year to be accommodated for her disability to return to teaching. (Rec. Doc. 22, at 6). However, Dr. Turner was unsuccessful in these attempts. Finally, Dr. Turner resigned on May 15, 2020. *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little*

---

[2] Plaintiff states in her *Sworn Declaration* that she requested FMLA leave on November 11th, 2019. (Rec. Doc. 48-12, at 3).

*v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out

specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

Plaintiff, Dr. Turner makes two claims in this case. The first is against HR Director Steven Kenney for interference with intermittent medical leave and retaliation under the FMLA. 29 U.S.C. 2601, et. seq. The second is against Nicholls State University for a violation of the Louisiana Employment Discrimination Law. La. R.S. 23:301, et. seq.

### I.   **FMLA Claims**

Plaintiff makes two types of claims under the FMLA: one for interference and one for retaliation but has only moved for summary judgment on the interference claim. Defendant Kenney has moved for summary judgment on both of these FMLA claims and also asserts qualified immunity.

### A. **FMLA Interference**

Plaintiff claims FMLA interference because she was required to produce doctor's notes after each time she was absent. Under the FMLA, a covered employer must provide eligible employees with up to twelve weeks of unpaid leave when the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is illegal for employers to "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right under the FMLA or to "discharge or in any manner

7

discriminate against any individual for opposing any practice made unlawful" under the FMLA. 29 U.S.C. § 2615(a). To make a prima facie case for FMLA interference, a plaintiff must demonstrate that "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Generally, once an employee is initially certified for intermittent FMLA leave, employers cannot ask employees to recertify their medical condition more often than every 30 days. 29 C.F.R. § 825.308. Employers may request certification in less than 30 days if the circumstances described by the previous certification have changed significantly or if "the employer receives information that casts doubt upon the employee's stated reason for the absence or the continuing validity of the certification." *Id.*

Plaintiff claims Defendant Kenney interfered with her FMLA rights when he required her to obtain doctor's notes providing medical justification for each absence. (Rec. Doc. 48-2, at 5). This requirement began while Dr. Turner was between periods of FMLA leave but allegedly continued once her leave was restored in November. (Rec. Doc. 48-12, at 3). Defendant never claims that there was any doubt as to Dr. Turner's condition or the validity of her FMLA certification that would justify recertification under the FMLA more frequently than every 30 days. Defendant also denies that he was the one who requested the doctor's notes. *Id.*

Defendant further asserted that all requests for doctor's notes were not made under the FMLA, but rather were required in order to grant *paid* sick leave. (Rec. Doc. 51, at 2).

Employers are allowed to require employees to substitute accrued paid sick leave for unpaid FMLA leave. 29 U.S.C. § 2612(d)(2)(A). Alternatively, employers can allow paid and unpaid leave to run concurrently, which is what the Defendant alleges happened in Dr. Turner's case. (Rec. Doc. 51, at 2). The Fifth Circuit has held that "an employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, even if the absences that the employee failed to report were protected by the FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). Therefore, employees are required to comply with company policy concerning notice of absences even while under FMLA protection.

In *Acker*, the plaintiff claimed FMLA interference when he suffered several weeks of disciplinary layoff while taking approved intermittent FMLA leave. *Id.* at 786. However, the court found that his discipline was the result of his failure to properly notify his employer on the days he needed to take his FMLA leave. *Id.* at 789. Unlike the claim in *Acker*, Dr. Turner's claim does not deal with notice of absences but rather with providing medical justification for those absences. However, the rationale still applies: Nicholls State policy allows supervisors to require doctor's notes for each absence when there has been excessive absenteeism in order to grant paid sick leave (Rec. Doc. 48-11, at 14); Defendant Kenney alleges

that Dr. Turner had been excessively absent, a determination which is up to her employer (Rec. Doc. 47-2, at 110); Dr. Turner allegedly sought paid and unpaid FMLA leave concurrently; *id.* therefore, the University was allowed to require doctor's notes from Dr. Turner for each absence as long as those notes were in conjunction with her paid sick leave rather than with her intermittent FMLA leave.

Dr. Turner relies on a district court case from Oregon as an example of a court holding that requiring doctor's notes for each absence under the FMLA was tantamount to recertification. *Oak Harbor Freight Lines, Inc. v. Antti*, 998 F. Supp. 2d 968, 975-79 (D. Or. 2014). However, the plaintiffs in *Oak Harbor*, unlike Dr. Turner, had no concurrent paid leave with their FMLA intermittent leave. Therefore, this Court is not persuaded that the reasoning of *Oak Harbor* applies to the instant case.

Furthermore, the doctor's notes did not actually prevent Dr. Turner from taking FMLA leave. In a 2021 case out of the U.S. District Court for the Middle District of Louisiana, Judge Brian Jackson held that absent a finding that an employee was actually prevented or discouraged from taking FMLA leave, there can be no interference. *Erickson v. Penn National Gaming, Inc.*, No. 19-00451, 2021 WL 1150067 (M.D. La. March 25, 2021). In *Erickson*, the plaintiff was initially approved for intermittent FMLA leave. *Id.* at *1. However, after recertifying her medical need for intermittent leave, she was informed by her supervisor that she was required to go to her doctor every time she was absent. *Id.* The plaintiff discussed the illegality of this requirement with the defendant's HR department and was thereafter

suspended. *Id.* However, after her attorneys contacted the defendant on her behalf, the employee was called back into work several days later and was never required to return to the doctor for illegally-frequent recertifications. *Id.* In *Erickson*, the court held that because the plaintiff was never actually denied leave and because she was never actually required to illegally recertify, she suffered no FMLA interference. The plaintiff argued that she was prejudiced because she had to expend monetary resources for legal assistance to get HR to end her suspension. However, the court held that "prejudice to the Plaintiff must be related to the actual act of taking leave under the FMLA, not efforts to prevent technical violations of the statute" in order to constitute interference. *Id.* at *3. The court held that "because Plaintiff cannot demonstrate that she was discouraged from taking or denied leave, or that she was prejudiced as a result of Defendant's unlawful policy, her interference claim fails." *Id.*

There are two distinctions between *Erickson* and the instant case: Dr. Turner actually had to provide doctor's notes during her period of FMLA leave, while Erickson did not, but Dr. Turner's employer requested doctor's notes for paid sick leave while Erickson's specifically requested them for FMLA leave. Even though Erickson's employer's request for doctor's notes was illegal, this was still not sufficient to constitute FMLA interference. Thus, a legal request for doctor's notes for paid sick leave in Dr. Turner's case is also not enough to constitute FMLA interference.

11

Therefore, Plaintiff's *Motion for Summary Judgment* **(Rec. Doc. 48)** should be **DENIED**. Defendant's *Motion for Summary Judgment* **(Rec. Doc. 47)** should be **GRANTED** as to the claim for FMLA interference.

## B.  FMLA Retaliation

Plaintiff also claims retaliation under the FMLA. Defendant has moved for summary judgment on this claim. The FMLA prohibits employers from "[discharging] or in any manner [discriminating] against any individual for opposing any practice made unlawful" under the FMLA. 29 U.S.C. § 2615(a). Plaintiff claims for the first time in her opposition to Defendants' motion for summary judgment that she was constructively discharged because she was allegedly pressured to retire. (Rec. Doc. 52, at 14). Plaintiff claims that she faced additional adverse employment actions such as "significant reductions in job responsibility: reassignment, twice to insignificant and meaningless work, supervised by individuals younger and inferior in rank to Dr. Turner" as well as "the retaliatory institution of an illegal and improper requirement to obtain doctor's notes for intermittent FMLA leave." *Id.* at 13.

In order to prove constructive discharge,

An employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign. Stated more simply, [the plaintiff's] resignation must have been reasonable under all the circumstances. Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment or humiliation by the employer

calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Brown v. Bunge Corporation*, 207 F.3d 776, 782 (5th Cir. 2000). Dr. Turner claims that she meets the requirements for numbers 1, 3, 4, and 5 listed by the Fifth Circuit, namely demotion, reduction in job responsibilities, reassignment to menial and degrading work, and reassignment to work under a younger supervisor. (Rec. Doc. 52, at 14). She claims that reassignment to work in the writing lab constitutes an adverse action such that a reasonable employee would feel compelled to resign in retaliation for her taking FMLA leave. *Id.*

Plaintiff alleges that the writing lab at Nicholls State is largely staffed by undergraduate students, and that her supervisor was a much younger person of inferior academic rank. *Id.* at 15. Defendants claim that the writing lab simply constituted a "less formal one-on-one setting" for her to teach students. Plaintiff characterizes the writing lab more akin to a tutoring resource center. However, notably Dr. Turner claims that her reassignment to the writing lab and Dr. Clune requesting that she turn in a letter of resignation happened at the same meeting. (Rec. Doc. 52-9, at 4). Therefore, Defendant had already decided that Dr. Turner should no longer be employed at the University. Plaintiff states that President Clune told her she would never teach again and gave her the option to either resign immediately, face the Tenure Revocation Committee again, or accept reassignment to the

13

writing lab and write a letter agreeing to retire at the end of the school year.
*Id.* Dr. Turner claims that her reassignment to the writing lab was a push to
make her resign when her resignation happened simultaneously to the
reassignment. Therefore, Dr. Turner's reassignment cannot be construed as
an adverse employment action that amounted to constructive discharge. Dr.
Turner had functionally already resigned, and her reassignment to the
writing lab was a way to allow her to finish out the school year before her
retirement. A reasonable jury could not find that Dr. Turner was
constructively discharged due to her reassignment to a non-classroom setting
as she had already turned in her resignation letter. Because this Court
dismisses all FMLA claims, it is unnecessary to decide whether Kenney
would have a viable claim for qualified immunity. This Court finds that
summary judgement should be **GRANTED** in favor of Defendants on all
FMLA claims.

## II.    LEDL Claim

Defendants have moved for summary judgment as to Dr. Turner's claim that
Nicholls State violated the Louisiana Employment Discrimination Law. Dr. Turner
claims that she was denied a reasonable disability accommodation to which she was
entitled when Nicholls State refused to let her teach online-only classes. (Rec. Doc.
22, at 6). Defendants argue that Dr. Turner's LEDL claim fails because she was not
a qualified individual under the LEDL who could perform the essential functions of
her employment and because the accommodation she requested is not reasonable.

(Rec. Doc. 47, at 4, 7). Plaintiff counters that she was qualified under the LEDL because teaching in person is not an essential function of her position and because she could have been accommodated with little or no cost or disruption to the University. (Rec. Doc. 52, at 2, 5).

Under the LEDL, employers must make reasonable accommodations to support qualified employees. "To prevail on a failure-to-accommodate claim brought under either the LEDL or the ADA, a plaintiff must prove that (1) she is a qualified individual; (2) the disability with its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for the known limitations." *Huber v. Blue Cross & Blue Shield of Fla., Inc.*, No. CV 20-3059, 2022 WL 1528564, at *5 (E.D. La. May 13, 2022) (citing Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen., 730 F.3d 450, 454 (5th Cir. 2013)). It is not disputed that Dr. Turner's employer was aware of her disability and its limitations. Therefore, the issues with the LEDL claim are whether Dr. Turner is a qualified individual and whether her requested accommodations were reasonable.

A qualified individual under the LEDL is defined as "a person with a disability who, with reasonable accommodation, can perform the essential functions of the employment positions that such person holds or desires." La. R.S. § 23:322(8). Defendants argue that Dr. Turner cannot be a qualified individual because an essential function of her job is to teach in person. (Rec. Doc. 47, at 5). Defendants point to *Credeur v. Louisiana*, 860 F.3d 785, 793 (5th Cir. 2017) in which the Fifth Circuit stated that "there is a general consensus among courts, including ours, that

regular work-site attendance is an essential function of most jobs." This is not to say that every job requires in-person attendance. This Court recognizes that remote work is a regular part of many different fields, a reality that has grown even more prevalent since the Covid-19 Pandemic. However, just because some employers allow remote work does not mean that all fields or workplaces are equally suited to this type of arrangement.

However, even if Dr. Turner is a qualified employee, the accommodations she requests are not reasonable. "A 'reasonable accommodation' under the ADA does not require the employer to 'relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties.'"[3] *Claiborne v. Recovery School District*, 690 Fed. Appx. 249, 255 (5th Cir. 2017), citing *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998). Dr. Turner admits in her opposition that in order to accommodate her request to teach online, three of her in-person sections would have to be swapped with three online sections which were already assigned to adjunct professors. (Rec. Doc. 52, at 7). Although these changes may have had a net cost of zero for the University as Dr. Turner claims (Rec. Doc. 52, at 7), the fact remains that an employer is not legally obligated to reassign existing employees to new duties in order to accommodate a qualified employee. Dr. Turner's request would require reassigning adjuncts who were supposed to teach online to instead teach in person.

---

[3] Louisiana courts look to federal employment law as a guideline to interpret the LEDL Therefore a reasonable accommodation is defined the same under the ADA and the LEDL. *Credeur*, 860 F.3d at 791, n. 3.

Therefore, even though there is a genuine dispute as to whether Dr. Turner is a qualified employee, the accommodations she requested are not reasonable. Thus, this Court finds that summary judgment as to the LEDL claim should be **GRANTED**.

## **CONCLUSION**

Plaintiff's claims present no genuine issue of material fact**. IT IS HEREBY ORDERED** that Plaintiff's *Partial Motion for Summary Judgment* **(Rec. Doc. 48)** is **DENIED**, and Defendants' *Motion for Summary Judgment* **(Rec. Doc. 47)** is **GRANTED**.

New Orleans, Louisiana, this 27th day of September, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE